[No. D016720. Fourth Dist., Div. One. Aug. 31, 1993.]

STEPHEN J. CARO, Plaintiff and Appellant, v.
PROCTER & GAMBLE COMPANY et al., Defendants and Respondents.

## Counsel

Milberg, Weiss, Bershad, Specthrie & Lerach, William S. Lerach, Alan M. Mansfield, Darren J. Quinn, Kaitlin M. McCarty, Bushnell, Caplan & Fielding, Alan M. Caplan, Gary J. Near, Philip Neumark and Jonathan D. McCue for Plaintiff and Appellant.

Mitchell, Keeney & Waite, Thomas R. Mitchell, Todd F. Stevens, Dinsmore & Shohl, Thomas S. Calder and Joseph E. Conley, Jr., for Defendants and Respondents.

## Opinion

**KREMER, P. J.**—Plaintiff Stephen J. Caro appeals an order denying his motion for class certification of his lawsuit against defendants The Procter & Gamble Company (P&G), N.W. Ayer, Inc. (Ayer), and The Vons Companies, Inc. (Vons). Caro contends in denying class certification the superior court applied improper legal criteria, impermissibly weighed the lawsuit's merits, and made unsupported findings about the atypicality of Caro's claims and the predominance of individual questions over common issues. We affirm the order.

### I

### Caro's Complaint

In April 1991 Caro filed a class action complaint against defendants for fraud and deceit; negligent misrepresentation; unlawful, unfair or fraudulent

business practice (Bus. & Prof. Code, §§ 17200, 17500); violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.); unjust enrichment and imposition of constructive trust; breach of contract and rescission; misbranding food (Health & Saf. Code, § 26566); and falsely advertising food (Health & Saf. Code, §§ 26460, 26461).

Caro's complaint alleged: Defendants falsely represented various P&G "Citrus Hill" products to be fresh orange juice, made from the heart of the orange, 100 percent pure orange juice, additive free, and from oranges picked and squeezed on the same day. Caro bought a Citrus Hill product at Vons's San Diego market in reliance upon its labeling and defendants' advertising representations.[1] However, the Citrus Hill products were not fresh but instead were reconstituted from frozen concentrate, contained additives including water and flavor enhancers, were made from the entire orange, and were not made from oranges picked and squeezed the same day. P&G was the subject of actions by various state and federal regulators involving its Citrus Hill products.[2]

Caro's complaint also alleged: Caro sought to represent a class composed of "all" the "millions of persons" in the United States who bought Citrus Hill products; and as a buyer of the "bogus" Citrus Hill product he was asserting claims typical of the claims of the entire class and would adequately represent the class's interests.

## II

## Caro's Motion for Class Certification

In February 1992 Caro filed a motion for class certification under Code of Civil Procedure section 382, asserting the lawsuit was "properly maintained as a class action on behalf of all California residents who purchased Citrus Hill Fresh Choice orange juice products . . . ." In support of his motion, Caro submitted declarations by his counsel and himself. Caro also submitted documents about state and federal actions involving P&G's advertising and

---

[1]Defendant Ayer was an advertising agency working for P&G.

[2]The complaint alleged: In January 1991 the Florida Citrus Commission notified P&G its labeling and advertising of Citrus Hill products were false and misleading, the State of Texas took the position Citrus Hill products were falsely labeled and advertised, and the Food and Drug Administration (FDA) instituted action against P&G for false and misleading labeling and advertising of Citrus Hill products. In April 1991 with federal court authorization 2,000 cases of Citrus Hill products were seized from a Minnesota warehouse as a result of the FDA action.

labeling. Opposing Caro's motion, defendants submitted various declarations and lodged Caro's deposition.[3]

After hearing, the superior court denied Caro's motion for class certification. The court concluded: "While I think that the label is clever and it's contrived and it uses some words like 'fresh', I do not believe that the plaintiff is an adequate representative of the class. I think . . . his claims aren't typical. He's not here saying that he thought this was fresh orange juice or anything close to it. What he's telling us is . . . that if he took the time to read the whole label, enough questions would have been raised in his mind. I think he's sophisticated enough to know he wasn't getting fresh orange juice and understood that. That leads to the second point, and that is that I think that the individual issues predominate. I think that 'is there a material misrepresentation' is not a common issue because I don't know what the average person is going to think about this label. . . . It's misleading, but whether it's a material misrepresentation, and . . . what is the material misrepresentation isn't clear to me, and because of the small amount of damages to the plaintiff and to other members of the class, I don't believe there's going to be a glut of cases. I don't think that . . . this is going to ease the court's burden, and as a result, I am not going to certify the class. . . . I think it's a close issue, and I do not believe that the plaintiff is an adequate representative. I think the individual issues predominate, and so I won't certify the class."

Caro appeals the order denying his motion for class certification.

## III

## Discussion

Asserting the superior court erred in denying his motion for class certification, Caro seeks reversal and remand with instructions to enter an order certifying the class. Caro contends the superior court applied improper legal criteria; made erroneous legal assumptions by misapplying California law, considering irrelevant issues and impermissibly weighing the action's merits; made unsupported findings about the atypicality and inadequacy of Caro's claims with respect to the remainder of the class; and made unsupported findings about the predominance of individual questions over common issues.

[3]Caro objected generally to the declarations submitted by defendants as irrelevant because the class certification inquiry assertedly should not consider the lawsuit's merits but instead should be limited to the complaint, Caro's counsel's declarations and Caro's testimony. Caro also raised specific objections to the declarations. The superior court denied Caro's motion to strike defendants' declarations, stating "I believe that I can consider evidence offered by the defendants." Caro's counsel acknowledged the court could "certainly consider the plaintiff's deposition."

On a motion for class certification, the plaintiff has the "burden to establish that in fact the requisites for continuation of the litigation in that format are present. [Citations.]" (*Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471 [140 Cal.Rptr. 215].) Caro's complaint alleged various causes of action including claims under CLRA. With respect to the propriety of the denial of class certification, we must analyze Caro's CLRA claims separately from his other causes of action. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122 [142 Cal.Rptr. 325].)

In *Hogya* v. *Superior Court, supra,* 75 Cal.App.3d 122, we concluded Civil Code section 1781, subdivision (b), established exclusive criteria for class certification in suits brought under CLRA. (75 Cal.App.3d at p. 140.)[4] "If the statutory criteria are satisfied, a trial court is under a duty to certify the class and is vested with no discretion to deny certification based upon *other* considerations." (75 Cal.App.3d at p. 140, italics in original.) However, we also noted the criteria for class certification were broader for actions brought under Code of Civil Procedure section 382. (75 Cal.App.3d at pp. 134-135.)[5] In *Hogya* the superior court denied class certification because substantial benefits would not accrue to the litigants, the class, the public and the courts, and because it was unlikely a high percentage of class members would ultimately come forward to prove separate claims to a portion of the total class recovery. (75 Cal.App.3d at pp. 127, 134.) We stated: "Undoubtedly, these factors are germane to class certification in actions brought under Code of Civil Procedure section 382." (*Id.* at p. 134, fn. omitted.)

With respect to Caro's causes of action other than his claims arising under CLRA, we conclude the superior court properly determined class treatment

[4]Civil Code section 1781, subdivision (b), a portion of CLRA, provides:

"The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

"(1) It is impracticable to bring all members of the class before the court.

"(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

"(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

"(4) The representative plaintiffs will fairly and adequately protect the interests of the class."

[5]"Code of Civil Procedure section 382 authorizes class action suits in California 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (See Civ. Code, § 1781, subds. (b)(2)-(4)." (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

would not substantially benefit the litigants and the court. With respect to all of Caro's causes of action including his CLRA claims, we conclude the superior court properly determined Caro's claims were not typical and individual issues predominated. Accordingly, we affirm the order denying class certification.

A

STANDARD OF REVIEW

Trial courts have great discretion with regard to class certification. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) "Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification." (*Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 654 [243 Cal.Rptr. 815].)[6] The ". . . ultimate decision as to the showing required at the pretrial level in order to maintain the class action should be within the discretion of the trial court, providing it applies the correct criteria in making its determination. [Citations.]" (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199-200 [112 Cal.Rptr. 144].) Absent other error, we will "not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (*Richmond* v. *Dart Industries, Inc., supra,* at p. 470.) " 'So long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld.' [Citations.]" (*Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 764-765 [259 Cal.Rptr. 789].)

Appeal of an order denying class certification "presents an exception to the general rule on review that we look only to the trial court's result, not its rationale." (*National Solar Equipment Owners' Assn.* v. *Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1281 [1 Cal.Rptr.2d 325].) Erroneous legal assumptions or improper criteria may require reversal "even though there may be substantial evidence to support the court's order." (*Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605, 612 [236 Cal.Rptr. 605].) Thus, we must determine whether the trial court engaged in correct legal analysis. (*National Solar Equipment Owners' Assn.* v. *Grumman Corp., supra,* at p. 1281.) Accordingly, we will analyze the reasons given by the

[6]"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. [Citations.]" (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].)

superior court in denying class certification. Any valid pertinent reason stated will be sufficient to uphold the order. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.*, *supra*, 37 Cal.App.3d at p. 199, fn. 2.) Review of the entire record here discloses the court's conclusion was based upon proper criteria and substantial evidence.

B

ANALYSIS

1

*Scope of Superior Court Inquiry*

Preliminarily, we reject Caro's contention the superior court erred in assertedly assuming that inquiry into the merits of the lawsuit was proper on a class certification motion. At the class certification hearing, the court did not rule on the merits of the lawsuit. Instead, the court simply considered evidence bearing on the factual elements necessary to determine whether to certify the class. (Code Civ. Proc., § 382; Civ. Code, § 1781, subd. (b).) When the trial court determines the propriety of class action treatment, "the issue of community of interest is determined on the merits and the plaintiff must establish the community as a matter of fact." (*Hamwi* v. *Citinational-Buckeye Inv. Co.*, *supra*, 72 Cal.App.3d at pp. 471-472.) A " '. . . class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." ' " (*In re Unioil Securities Litigation* (C.D.Cal. 1985) 107 F.R.D. 615, 618, quoting *Coopers & Lybrand* v. *Livesay* (1978) 437 U.S. 463 [57 L.Ed.2d 351, 98 S.Ct. 2454]; also *Harriss* v. *Pan American World Airways, Inc.* (N.D.Cal. 1977) 74 F.R.D. 24, 36.)[7] In sum, the fact some evidence relevant to a class action determination may have been relevant also to the merits of the lawsuit did not preclude the court from considering such evidence at the hearing on Caro's motion for class certification.

[7]In *Harriss* v. *Pan American World Airways, Inc.*, *supra*, 74 F.R.D. 24, the court stated "the facts relevant to the class action determination and definition may largely be the same as those relevant to the merits of the action. Facts bearing on liability and relief will also tend to have a bearing on numerosity, commonality, typicality and adequacy of representation. [Citations.]" (*Id.* at p. 36.)

California courts may look to federal authority for guidance on matters involving class action procedures. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732].)

2

*No Substantial Benefit to Litigants or to Court*

In opposing Caro's motion for class certification, defendants asserted any benefits from class treatment would be insignificant because individual claims were based on purchases of at most $3 and any damages would be less than $1 per purchase. Defendants also asserted Caro's request for injunctive relief was moot because the practices of which Caro complained had ceased.

In denying class certification, the superior court stated "because of the small amount of damages to the plaintiff and to other members of the class, I don't believe there's going to be a glut of cases. I don't think that . . . this is going to ease the court's burden, and as a result, I am not going to certify the class." Attacking that finding, Caro contends the court erroneously applied improper criteria involving the quantum of damages and the likelihood of multiple actions. However, with respect to all Caro's causes of action other than his claims under CLRA (*Hogya* v. *Superior Court, supra,* 75 Cal.App.3d 122), we conclude the superior court acted within its discretion in determining Caro did not meet his burden to demonstrate class treatment would substantially benefit both the litigants and the court. (*Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755]; *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Collins* v. *Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62 [231 Cal.Rptr. 638]; *Devidian* v. *Automotive Service Dealers Assn.* (1973) 35 Cal.App.3d 978 [111 Cal.Rptr. 228]; *Stilson* v. *Reader's Digest Assn., Inc.* (1972) 28 Cal.App.3d 270 [104 Cal.Rptr. 581].)

In *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, the Supreme Court stated: "Resting on considerations of necessity and convenience, the class action attempts to further justice. [Citations.] However, because group action is also capable of injustice, the representative plaintiff must show substantial benefit will result both to the litigants and to the court. [Citations.]" (*Id.* at p. 385.) The court also stated: "A factor in determining feasibility of the group approach is the probability each member will come forward ultimately, identify himself and prove his separate claim to a portion of the total recovery. [Citation.] [¶] However, when potential recovery to the individual is small and when substantial time and expense would be consumed in distribution, the purported class member is unlikely to receive any appreciable benefit. The damage action being unmanageable and without substantial benefit to class members, it must then be dismissed. [Citations.]" (*Id.* at p. 386.)

In *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, the Supreme Court stated "despite this court's general support of class actions, it has not been unmindful of the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. Instead, it has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.]" (*Id.* at p. 459; accord, *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750].)

In *Collins* v. *Safeway Stores, Inc., supra,* 187 Cal.App.3d 62, the appellate court noted it was "without question that not all multiple consumer cases lend themselves to a class proceeding." (*Id.* at p. 68.)

In *Stilson* v. *Reader's Digest Assn., Inc., supra,* 28 Cal.App.3d 270, the appellate court stated: "We note that the trend of authority favorable to class actions [citations] does not vest an uncontrolled discretion in the named plaintiffs and their counsel to represent a class of unlimited size [citations]. Rather . . . there must be some benefit of substance to the parties and the court. [¶] Although an award of but nominal damages to each of the millions of unnamed plaintiffs would impose a heavy penalty upon defendants, it would hardly serve the interest of any plaintiff. Yet to award even slightly more than nominal damages, the court would be required to examine the mental and subjective state of each of the millions of plaintiffs, since in each case such individual appraisal is of the essence of the claim for damages and, indeed, of the cause of action." (*Id.* at p. 274.)

Asserting as a practical matter this lawsuit can meaningfully proceed only as a class action, Caro contends reversal is warranted because the court erroneously assumed small damages and the unlikelihood of individual cases militated in favor of denying his class certification motion. Specifically, Caro asserts the court erred in denying class certification on the basis a "glut" of actions would not be filed. Caro also asserts the court erred in suggesting class certification was unnecessary where the amount of individual damages was not substantial. Caro characterizes as "endemic to consumer class action litigation" various circumstances cited by the superior court including the damage amount per class member, the likelihood of multiple actions, and whether the misrepresentations' materiality could be proven on a classwide basis. Asserting California law favors consumer class actions to protect consumers and prevent unjust enrichment, Caro cites various cases noting the class action lawsuit is an important tool in providing redress to persons with small claims and precluding defendants from retaining the benefits of their alleged wrongs. (*State of California* v. *Levi Strauss &*

*Co.* (1986) 41 Cal.3d 460, 471-472 [224 Cal.Rptr. 605, 715 P.2d 564]; *Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 609 [183 Cal.Rptr. 360, 645 P.2d 1192]; *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 469; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 808, 816; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 715; *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 143 [191 Cal.Rptr. 849]; *Bruno* v. *Superior Court* (1981) 127 Cal.App.3d 120, 127 [179 Cal.Rptr. 342]; *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 962 [124 Cal.Rptr. 376].)[8] However, as noted, California courts have also recognized limitations on the use of class action lawsuits. (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381; *Collins* v. *Safeway Stores, Inc., supra,* 187 Cal.App.3d 62; *Devidian* v. *Automotive Service Dealers Assn., supra,* 35 Cal.App.3d 978; *Stilson* v. *Reader's Digest Assn., Inc., supra,* 28 Cal.App.3d 270.)

On this record the superior court reasonably concluded Caro did not demonstrate substantial benefits to the litigants and the court would result from class certification. Class members were unlikely to receive substantial benefit from the lawsuit because, as indicated by the evidence, any potential recovery to the individual would be small. (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at p. 386.)[9] According to Caro, his damage was the $3 purchase price he paid for each of four 64-ounce cartons of Fresh Choice orange juice. According to defendants, 64-ounce national brand orange juice

[8]"California courts have recognized that the consumer class action is an essential tool for the protection of consumers against exploitative business practices." (*State of California* v. *Levi Strauss & Co., supra,* 41 Cal.3d at p. 471.) "Fluid recovery may be essential to ensure that the policies of disgorgement or deterrence are realized. [Citation.] Without fluid recovery, defendants may be permitted to retain ill gotten gains simply because their conduct harmed large numbers of people in small amounts instead of small numbers of people in large amounts." (*Id.* at p. 472.)

" 'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' [Citation.]" (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 469.)

"Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 808.)

"[A]bsent a class suit, recovery by any of the individual taxicab users is unlikely. The complaint alleges that there is a relatively small loss to each individual class member. In such a case separate actions would be economically unfeasible. Joinder of plaintiffs would be virtually impossible in this case. It is more likely that, absent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover the amount of their overpayments is to be preferred over the foregoing alternative." (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 715, fns. omitted.)

[9]There was also little probability class members would come forward after liability was established to prove entitlement to a portion of the class recovery. (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at p. 386.)

from concentrate sold in 1990 for about 40 to 60 cents less than pasteurized orange juice which in turn sold for about $1.10 less than store-squeezed orange juice. In sum, the small amounts potentially available to class members here provided no real benefit. Instead, the benefits to individual consumers would be minimal or nonexistent. Further, the evidence indicated in compliance with a consent decree with the FDA to settle litigation involving the labeling of Citrus Hill Fresh Choice orange juice P&G deleted the brand name "Fresh Choice" and made other label changes including deleting all references to the word "fresh." P&G was also precluded from using such language without FDA permission. Thus, Caro's prayer for injunction was effectively moot. "[W]hen as here, the assertedly wrongful practice has ended long before the action is filed, its requested termination is a rather empty prayer." (*Ibid.*)[10]

Moreover, declining to certify this lawsuit as a class action did not contravene the policies of disgorgement or deterrence. Those policies have been vindicated in other proceedings. Defendants' asserted actionable conduct was governed under federal and state regulations. (See e.g., 21 C.F.R. §§ 146.145, 146.146 (1993); Health & Saf. Code, § 26559, subd. (a).) P&G was subjected to federal and state proceedings involving Citrus Hill orange juice. Defendants have been required to disgorge funds and future misconduct has been deterred. Evidence indicated P&G spent more than $450,000 complying with consent decrees and settlement agreements with various governmental agencies including the California Attorney General and District Attorneys in Santa Cruz and Alameda Counties. In its consent decree with the FDA, P&G agreed to change the name of Citrus Hill Fresh Choice and delete other language claimed by Caro to be deceiving. The agreement also precluded future use of such language without FDA permission.[11]

Further, fashioning an effective remedy to distribute monetary compensation to the consumers affected poses a problem where, as here, such persons are potentially numerous and likely difficult to find because of inadequate records. The utility of class treatment declines when other effective and perhaps more efficient means exist to resolve the problem. "While termination of a defendant's alleged wrongdoing is a factor to be considered [citation], it does not warrant group action for damage when the

[10]Defendants also submitted evidence indicating every package of Citrus Hill Fresh Choice orange juice contained information about a toll-free telephone number for consumer comments and complaints; and consumers calling such number and expressing dissatisfaction were given coupons for replacement products or a refund of the purchase price. Defendant Vons had a policy to furnish cash refunds at the retail store to consumers unsatisfied for any reason with products sold by Vons.

[11]We also note evidence indicating sales did not increase when P&G changed its orange juice's name from Citrus Hill Select to Citrus Hill Fresh Choice.

members will not recover damage, and when a simpler remedy such as mandate is available." (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at p. 386.) The trial court must " 'assess the advantages of alternative procedures for handling the total controversy'. Many factors must be considered in determining whether a class action is superior to other available methods." (*Kamm* v. *California City Development Company* (9th Cir. 1975) 509 F.2d 205, 211-212.)

In *Kamm* v. *California City Development Company, supra,* 509 F.2d 205, the trial court concluded a class action was " 'not superior to other available methods for the fair and efficient adjudication of the controversy herein, especially in light of the proceedings already brought by the California Attorney General and Real Estate Commissioner . . . and of the relationship of these proceedings to the facts and posture of this particular case'." (*Id.* at p. 209.) In affirming the trial court's exercise of discretion, the appellate court stated: " 'Since the purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of settling the controversy, it seems consistent with that purpose to determine whether any administrative methods of settling the dispute exist.' [Citation.]" (*Id.* at p. 211.) Here the State of California has obtained relief in other proceedings to correct various alleged false and misleading advertising and labeling practices by defendants. A class action would require substantial expenditure of judicial time effectively duplicating work which has been or could be done by the state. (*Id.* at p. 212.) The FDA action has also resulted in significant relief including cessation of the assertedly deceptive conduct. (*Ibid.*) Further, the fact Caro's lawsuit may assert different theories than those involved in the other federal and state proceedings does not preclude consideration of those other proceedings in determining whether to certify the class action here, since such actions involve the same or similar misconduct by defendants. (*Id.* at p. 213.)

Additionally, Business and Professions Code sections 17200 et seq. provide individual remedies for statutory violations alleged by Caro. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 215 [197 Cal.Rptr. 783, 673 P.2d 660].) Caro did not demonstrate class treatment was superior to an individual action under those statutes. (*Dean Witter Reynolds, Inc.* v. *Superior Court, supra,* 211 Cal.App.3d at p. 772.) In a suit arising under Business and Professions Code section 17200 et seq., the court "is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action. [Citations.] [¶] In contrast to the streamlined procedure expressly provided by the Legislature, the management of a class action is 'a difficult legal and administrative task.' [Citation.]" (*Dean Witter Reynolds, Inc.* v. *Superior Court, supra,* at p.

773.) In *Dean Witter Reynolds, Inc.* the appellate court stated: "The suitability of the unfair competition claims for class action treatment must be tested by principles developed under the general class action statutes, Code of Civil Procedure section 382. One of these principles is that 'the representative plaintiff must show substantial benefit will result both to the litigants and to the court. . . . [¶] Rule 23(b)(3) of the Federal Rules of Civil Procedure provides that, for a class action to be maintained, it must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' This 'superiority' criterion has been held to be 'manifest' in the . . . requirement that the class mechanism confer 'substantial benefits.' [Citations.]" (*Id.* at pp. 772-773, fn. omitted.)

Finally, the record indicates class treatment here would simply clog the courts. Particularly pertinent is the Supreme Court's comment in *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381: "[W]hen the individual's interests are no longer served by group action, the principal—if not the sole—beneficiary then becomes the class action attorney. To allow this is 'to sacrifice the goal for the going,' burdening if not abusing our crowded courts with actions lacking proper purpose. [Citation.]" (*Id.* at p. 386.)

In sum, this record supports the superior court's finding class treatment would not result in substantial benefits to the litigants and to the courts. (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at p. 385; *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 459; *Hogya* v. *Superior Court, supra,* 75 Cal.App.3d at pp. 134-135.) Such finding justified denial of class certification for all of Caro's causes of action other than his CLRA claim. (*Hogya* v. *Superior Court, supra,* at p. 140; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn., supra,* 37 Cal.App.3d at p. 199, fn. 2.)

3

*Caro's Claims Were Not Typical of the Class*

Although the superior court's proper determination class treatment would not ease its burden was alone sufficient to defeat class certification of all non-CLRA causes of action, we also conclude Caro failed to demonstrate his claims were typical of class members' claims. Such additional conclusion applies to all of Caro's causes of action, including his claims under CLRA. (*Richmond* v. *Dart Industries, supra,* 29 Cal.3d at p. 470; Civ. Code, § 1781, subd. (b)(3).)

When the trial court determines the propriety of class action treatment, "the issue of community of interest is determined on the merits and the

plaintiff must establish the community as a matter of fact." (*Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d at p. 472.) "[T]he crucial inquiry centers upon whether the plaintiffs are truly representative of the absent, unnamed class members." (*Bartlett* v. *Hawaiian Village, Inc.* (1978) 87 Cal.App.3d 435, 438 [151 Cal.Rptr. 392].) Based upon substantial evidence in the record, the superior court properly determined Caro was not truly representative of the class and thus did not establish as a matter of fact the requisite community of interest for class certification.

In determining Caro's claim was not typical of class members' claims, the superior court stated Caro did not think Citrus Hill Fresh Choice orange juice was fresh orange juice. The court also stated Caro testified he would have had questions about the juice if he had read the whole label. Thus, in essence, the court found Caro's claims were not typical of the class because he expected "premium" juice, not "fresh" juice, and he read only the top portion of the carton unlike those consumers who may have read the entire label.

Caro attacks the court's conclusion his claims were not typical of those of other class members. Specifically, Caro characterizes as contrary to the evidence—and based upon an unwarranted intrusion into the case's merits—the court's finding Caro did not believe Citrus Hill Fresh Choice orange juice was fresh. Caro also attacks as without evidentiary support the court's finding a full reading of the label would have raised enough questions in Caro's mind to know he was not buying fresh juice. Caro further asserts the court made erroneous assumptions of relevancy and improperly intruded into the lawsuit's merits in focusing on his "sophistication" as a consumer.[12] However, in determining Caro's claims were atypical the court applied appropriate criteria and based its conclusion on substantial evidence.

" 'The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent. [Citations.]' [Citation.]" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 874 [127 Cal.Rptr. 110, 544 P.2d 1310].) The class representative must be situated similarly to class members. (*Classen* v. *Weller* (1983) 145

[12]Caro contends he seeks to represent all buyers of Citrus Hill Fresh Choice orange juice who were misled by defendants' deceptive advertising practices. Asserting all class members were "victimized by the same actionable conduct—contrivance of a misleading labeling and advertising scheme for Fresh Choice orange juice and placement of the product on the market," Caro contends his claims are identical to those of the class. Caro also contends he bought the product, was injured as a result of defendants' conduct, and shared with class members the alleged injury, to wit, the difference between the price paid and the value received. However, as discussed below, for purposes of determining the propriety of class treatment the record belies those broad-brushed contentions.

Cal.App.3d 27, 46 [192 Cal.Rptr. 914].) "It is the fact that the class plaintiff's claims are typical and his representation of the class adequate which gives legitimacy to permitting him to bind class members who have notice of the action. [Citations.]" (*Trotsky* v. *Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 146 [121 Cal.Rptr. 637].) Further, "there can be no class certification unless it is determined by the trial court that similarly situated persons have sustained damage. There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage." (*Guidotti* v. *County of Yolo* (1989) 214 Cal.App.3d 1552, 1566-1567 [271 Cal.Rptr. 858]; also *Collins* v. *Safeway Stores, Inc.*, *supra*, 187 Cal.App.3d at pp. 72-73; cf. *Spoon* v. *Superior Court* (1982) 130 Cal.App.3d 735, 741 [182 Cal.Rptr. 44, 28 A.L.R.4th 974].)

Substantial evidence supports the court's finding Caro did not believe the Citrus Hill Fresh Choice orange juice he bought was "fresh."[13] According to Caro's complaint, the class members were buyers of Citrus Hill Fresh Choice orange juice who were deceived by the product's labeling and advertising into believing they were buying "fresh" orange juice. In seeking class certification, Caro defined "fresh" orange juice as "simply the juice squeezed from oranges; it is not altered, heated or frozen." However, at deposition Caro testified that when buying Citrus Hill Fresh Choice orange juice he did not expect "the orange juice that a store squeezes and puts into its own container and sells as fresh squeezed orange juice." Instead, Caro thought it was "premium" orange juice.[14] Caro defined "premium" orange juice as involving characteristics of pasteurized orange juice and fresh orange juice. Caro understood pasteurization as "the process of heating something to get rid of bacteria." Thus, Caro's definition of "premium" juice to include juice heated during pasteurization was broader than his definition of "fresh" juice which excluded juice that was heated. Although Caro alleged the class was deceived into believing defendants' product was "fresh," the evidence indicated he himself believed the juice was simply "premium." Because Caro did not claim to be misled in the manner the class was allegedly deceived, the court could not "decide the issue of the rights of such individuals that might possibly exist." (*Chern* v. *Bank of America*, *supra*, 15 Cal.3d at p. 875.) In sum, on this record the superior court

[13]As noted, at the hearing on the motion for class certification Caro's counsel stated the court could "certainly consider the plaintiff's deposition." Further, the court was required to determine "on the merits" the issue of community of interest including the typicality of Caro's claims. (*Richmond* v. *Dart Industries, Inc.*, *supra*, 29 Cal.3d at p. 470; *Hamwi* v. *Citinational-Buckeye Inv. Co.*, *supra*, 72 Cal.App.3d at p. 472.)

[14]In his declaration Caro simply stated the packaging and advertising of Fresh Choice orange juice cartons "suggested" the juice was "fresh squeezed" and he was "influenced" by the word "fresh."

reasonably concluded Caro's claims involving "premium" juice were not typical of the class claims involving "fresh" juice.[15]

Further, substantial evidence also supports the court's finding that reading the entire Citrus Hill Fresh Choice orange juice label would have raised questions in Caro's mind about the nature of the juice. At deposition Caro testified that when buying Citrus Hill Fresh Choice orange juice he read only the top half of the labels. Caro also testified if he had read the three sides of the carton stating the juice was "from concentrate" he would have concluded the juice was not "premium." Thus, at most Caro's claim would be typical of only those persons whose reading of the label was similarly limited. Caro has not demonstrated the existence of such persons.

Similarly, Caro did not demonstrate his claims of damages in "not receiving the premium product he paid for" were typical. Caro asserts he shared with class members common damages, to wit, the difference between the price paid and the value received. However, Caro did not show his damages for not receiving "premium" orange juice would be typical of those suffered by the complaint-defined class of consumers who believed they were receiving "fresh" orange juice. Neither did Caro show his damages would be typical of those of persons who read the entire label and received the "from concentrate" orange juice for which they paid. Although difference in computing damages is not sufficient to deny class certification, differences in the actual existence of damages or in the manner of incurring damages are appropriate considerations. (*Guidotti* v. *County of Yolo, supra,* 214 Cal.App.3d at pp. 1566-1567; *Collins* v. *Safeway Stores, Inc., supra,* 187 Cal.App.3d at pp. 72-73; *Spoon* v. *Superior Court, supra,* 130 Cal.App.3d at pp. 740-741.)[16] In sum, the superior court could properly conclude Caro's claims of damages, not simply the computation of such damages, were atypical of other purported class members.

[15]Ironically, Caro's reply brief asserts: "Any distinctions appellant draws between [*sic*] premium, fresh orange juice and pasteurized orange juice are minimal and do not render appellant's claims atypical." However, such distinctions among types of orange juice are the crux of the lawsuit Caro seeks to pursue.

[16]In *Spoon* v. *Superior Court, supra,* 130 Cal.App.3d 735, in approving discovery relevant to the class certification issue the appellate court stated: "The second item concerns questions regarding damages. . . . While in many cases this item of information may not be relevant to the class issue (or even if relevant, the relevancy is slight and is outweighed by other considerations), here there is a relevancy which is not clearly outweighed by other considerations. To illustrate, perhaps discovery may disclose that many absent class members do not and did not claim to have any damage, because whatever amount they have paid and are paying for maintenance was or is within, or reasonably close to, amounts which they expected to pay. If the great majority of the class so answered, such information would tend to disclose no misrepresentation and no reliance and thus no cause of action for a class action on fraud or negligent misrepresentation. The legitimacy of allowing this as reasonable discovery does not depend merely on the label put on the interrogatory as relating to the 'amount' of damage. The amount of damage is an incidental and unavoidably necessary part of the other legitimate

Finally, Caro makes much of the superior court's statement he was "sophisticated enough to know he wasn't getting fresh orange juice and understood that." Caro attacks as an intrusion into the lawsuit's merits the court's finding his sophistication militated against a conclusion his claims were typical. Caro also contends the court erroneously assumed his level of sophistication was relevant in determining whether his claims were typical, arguing the typicality inquiry should have focused only on whether his claims were similar to those of other class members and not on his sophistication level. Caro further contends the court erred in requiring him to prove he was not a "sophisticated" consumer. However, the court's statement Caro was sophisticated does not indicate the court applied improper criteria in denying class certification. Instead, the court's reference to Caro's sophistication simply reflects a portion of the factual basis underlying its conclusion Caro's claim was not typical of the class because he knew he was not buying "fresh" orange juice.

In sum, Caro did not meet his burden to establish as a matter of fact that his claims were typical of the class he sought to represent. (*Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d at pp. 471-472.) Caro did not show other consumers were looking for "premium" orange juice. Caro did not show other consumers failed to read the entire label. Further, Caro did not show actual damages for consumers who bought and received the juice knowing it was "from concentrate." Caro was not truly representative of the absent, unnamed class members. (*Bartlett* v. *Hawaiian Village, Inc., supra,* 87 Cal.App.3d at p. 438.) Thus, based upon application of correct legal criteria and substantial evidence in the record the superior court properly concluded Caro's claims were not typical. Such determination alone was sufficient to defeat class certification on all Caro's causes of action. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 704; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn., supra,* 37 Cal.App.3d at p. 199, fn. 2.)

4

*Individual Issues Predominated*

Caro also failed to establish factually another prong of the community of interest requirement, to wit, predominant common questions of law or fact. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470,

part of the inquiry, i.e., whether damage has in fact been truly suffered and if so from what cause. . . . At bench, as indicated, the interrogatories were related primarily to a common class issue, i.e., whether there was truly a misrepresentation or simply an unreasonable misunderstanding or misinterpretation by only a few class members." (*Id.* at pp. 740-741.)

*Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d at pp. 471-472.)

Although characterizing as "a close one" the question whether common issues predominated, the superior court concluded individual issues predominated. The court stated the existence of a material misrepresentation was not a common issue.[17] Defining the issue as whether Caro was misled into thinking Citrus Hill Fresh Choice orange juice was "fresh" juice, the court stated Caro's deposition disclosed there was no material misrepresentation to Caro.

Asserting a misrepresentation's materiality involves an objective inquiry susceptible to common proof, Caro contends the court erroneously assumed the materiality of defendants' misrepresentations required individualized proof. Caro cites *Cummings* v. *Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407 [249 Cal.Rptr. 568] and *Lynch* v. *Cook* (1983) 148 Cal.App.3d 1072 [196 Cal.Rptr. 544].[18] Caro also attacks as an unwarranted intrusion into the lawsuit's merits the court's conclusion it was unclear whether the existence of a material misrepresentation was a common question as to all class members.[19] However, in determining individual issues predominated, the court applied appropriate criteria and based its conclusion on substantial evidence.[20]

Common issues are predominant when they would be "the principal issues in any individual action, both in terms of time to be

[17]As noted, the court specifically stated: "I think that the individual issues predominate. I think that 'is there a material misrepresentation' is not a common issue because I don't know what the average person is going to think about this label. . . . It's misleading, but whether it's a material misrepresentation, and . . . what is the material misrepresentation isn't clear to me . . . ."

[18]Some cases "hold materiality is a mixed question of law and fact that can be decided as a matter of law *if* reasonable minds could not disagree on the materiality of the misrepresentations. [Citations.]" (*Cummings* v. *Fire Ins. Exchange, supra,* 202 Cal.App.3d at p. 1417, italics in original.) In *Lynch* v. *Cook, supra,* 148 Cal.App.3d 1072, the appellate court stated " '[t]he question of materiality, it is universally agreed, is an *objective* one, involving the significance of an omitted or misrepresented fact to a reasonable [person].' [Citation.]" (*Id.* at pp. 1081-1082, italics in original.)

[19]Further, according to Caro the issue of material misrepresentation was an element only in his causes of action for fraud, negligent misrepresentation, unjust enrichment and constructive trust, and violation of CLRA.

[20]Again, we note at the hearing on the motion for class certification Caro's counsel stated the court could "certainly consider the plaintiff's deposition." Further, the court was required to determine "on the merits" the issue of community of interest including the existence of predominant common questions of law or fact. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d at p. 472.) Defendants could also properly introduce evidence to rebut any inference or presumption of reliance arising from Caro's evidence of a material misrepresentation. (*Vasquez* v. *Superior*

expended in their proof and of their importance . . . ." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 810.) A ". . . class action cannot be maintained where each member's right to recover depends on facts peculiar to his case . . ." because ". . . the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the 'class judgment' determining issues common to the purported class. [Citation.]" (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 459.) "Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability." (*Id.* at p. 463.)

On this record the court properly concluded individual issues involving the existence and nature of any material misrepresentation would predominate over common issues. " 'A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. [Citation.] Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did. [Citation.] . . .' [Citation.]" (*Lacher* v. *Superior Court* (1991) 230 Cal.App.3d 1038, 1049 [281 Cal.Rptr. 640].) Caro alleged defendants' primary advertising and labeling misrepresentations were that Citrus Hill Fresh Choice orange juice was "fresh" and contained "no additives." However, as the superior court properly noted, there was no material misrepresentation to Caro because he did not believe defendants' product to be "fresh." Whether other class members believed the juice was "fresh" would be a matter of individual proof. Further, although Caro's deposition testimony might be construed as suggesting he personally was misled into believing the juice contained "no additives," it would be a matter of individualized proof whether the claim of "no additives" constituted a material misrepresentation to class members who—unlike Caro—read the portions of the label stating "from concentrate." Indeed, at deposition Caro himself testified if he had read the bottom part of the three sides of the carton saying "from concentrate," he would have concluded it did not contain "premium" juice. Moreover, from examining the carton the superior court could reasonably infer only a limited number of consumers would believe they were buying something other than "from concentrate" juice. Thus, the court properly concluded the issue whether any asserted misrepresentation induced the purchase of Citrus Hill Fresh Choice orange juice would vary from consumer to consumer.

In sum, the record indicated that consumers—who thought they were buying different products such as "premium," "fresh," or "from concentrate"

---

*Court, supra,* 4 Cal.3d at p. 814; *Osborne* v. *Subaru of America, Inc., supra,* 198 Cal.App.3d at pp. 660-661.)

orange juice based upon their personal assumptions about the nature of the products they wanted to buy and upon reading various portions of the labels—would be required individually to prove liability and damages. Since class members would have to prove individually the existence of liability and damages, the community of interest requirement was not satisfied and class treatment would be proper only in an extraordinary situation. (*City of San Jose* v. *Superior Court*, *supra*, 12 Cal.3d at p. 463.) We find nothing in the record suggesting this case presents any such extraordinary situation.

5

*Adequate Representation of Class*

Under the third prong of the community of interest requirement, the class representative must be able to represent the class adequately. (*Richmond* v. *Dart Industries, Inc.*, *supra*, 29 Cal.3d at p. 470.) The superior court concluded Caro could not adequately represent the class because his claims were not typical.

Caro attacks as without substantial evidentiary support the court's finding he was not an adequate class representative. Caro contends the court confused the typicality and adequacy requirements, which assertedly differ and involve separate issues. Relying on authority indicating the adequacy inquiry should focus on the abilities of the class representative's counsel and the existence of conflicts between the representative and other class members, Caro notes the lack of findings his counsel could not adequately represent the class or he had any conflicts with the class. (*Lazar* v. *Hertz Corp.*, *supra*, 143 Cal.App.3d 128; *McGhee* v. *Bank of America* (1976) 60 Cal.App.3d 442 [131 Cal.Rptr. 482].)[21] However, other authority has not precisely differentiated between the elements of typicality and adequacy of representation. In *Stephens* v. *Montgomery Ward* (1987) 193 Cal.App.3d 411 [238 Cal.Rptr. 602], the appellate court stated: "In short, in order to be an adequate representative, plaintiff must show that her claims are typical of the claims of the class. [Citations.]" (*Id.* at p. 422.) In any event, given the court's valid findings class treatment provided no substantial benefit, Caro's claims were not typical and individual issues predominated over common questions, the

[21]"Adequacy of representation depends on whether the plaintiff's attorney is qualified to conduct the proposed litigation and the plaintiff's interests are not antagonistic to the interests of the class. [Citations.]" (*McGhee* v. *Bank of America*, *supra*, 60 Cal.App.3d at p. 450.) In *Lazar* v. *Hertz Corp.*, *supra*, 143 Cal.App.3d 128, we noted Lazar "is not antagonistic to the interests of the other class members. Hertz does not contend his lawyers are not qualified to conduct the litigation. [Citation.]" (*Id.* at p. 142.)

propriety of the superior court's denial of Caro's motion for class certification does not depend upon an independent finding he could not adequately represent the class. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.*, *supra*, 37 Cal.App.3d at p. 199, fn. 2.)

6

*Subclasses*

Without merit is Caro's contention that assertedly minor variations among the class members' claims could be handled through establishing subclasses. "[T]here are limits outside of which the subclassification system ceases to perform a sufficiently useful function to justify the maintenance of the class action. The instant situation represents merely an example of facts falling outside these limits." (*City of San Jose* v. *Superior Court*, *supra*, 12 Cal.3d at p. 463, fn. 10.)

7

*Evidentiary Matters*

In his reply brief Caro contends the superior court erred in considering the declarations submitted by defendants because such declarations assertedly did not constitute substantial credible evidence on any issue concerning class certification. Caro launches against those declarations various specific evidentiary objections including relevancy, best evidence, foundation, argumentative, and hearsay. However, we do not reach those contentions because, without good cause, they were raised on appeal only in the reply brief. (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) Caro's opening brief simply asserted without argument or authority the court erroneously overruled his general objections that the declarations went beyond the legitimate scope of the class certification process by "exclusively" seeking to refute the merits of the lawsuit.

8

*Conclusion*

On this record the superior court properly denied Caro's motion for class certification.

## Disposition

The order denying class certification is affirmed. Respondents are entitled to costs on appeal.

Benke, J., and Froehlich, J., concurred.