Michael MAZZA, et al.

v.

AMERICAN HONDA MOTOR CO.

No. CV 07–7857–VBF(JTLx).

United States District Court,
C.D. California.

Dec. 16, 2008.

Joseph Cho, Initiative Legal Group LLP, Century City, CA, Marc Primo, Mark Yablonovich, Monica Balderrama, Orlando J. Arellano, Payam Shahian, Initiative Legal Group, Los Angeles, CA, for Michael Mazza.

Eric Y. Kizirian, Jon P. Kardassakis, Kenneth D. Watnick, Lewis Brisbois Bisgaard & Smith, LLP, Los Angeles, CA, for American Honda Motor Co.

**PROCEEDINGS (IN CHAMBERS): RULING ON SUBMITTED MATTER, PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION [Docket # 83]**

VALERIE BAKER FAIRBANK, District Judge.

The Court has received, read and considered Plaintiffs' Renewed Motion for Class

Certification (Docket # 83) and the documents submitted in support of the Motion; Defendant's Opposition to Plaintiffs' Motion, and the documents submitted in support of Defendant's Opposition; and Plaintiffs' Reply papers, and the documents submitted in support of Plaintiffs' Reply. The Court has considered the papers and the oral arguments made by counsel for Plaintiffs and Defendant at the hearings on Monday, December 8, 2008 and Tuesday, December 9, 2008, reflected in the Reporter's Notes. The Court would note that the arguments made by counsel at the hearing were excellent and deserve careful attention. For the reasons set forth herein, the Court GRANTS Plaintiffs' Renewed Motion for Class Certification, finding that Plaintiffs have met their burden of showing that the proposed class meets the requirements of Rule 23(a) as well as Rule 23(b)(3).

## I. Background & Procedural History

Plaintiffs' putative Class Action Complaint was filed on December 3, 2007, alleging that Defendant American Honda Motor Co., Inc. ("Honda") misrepresented the characteristics of the Collision Mitigation Braking System of the Acura RL vehicle. Plaintiffs argue that Honda knew, but omitted the following information from its pre-purchase marketing materials about the RL with the Collision Mitigating Breaking System ("CMBS"): (1) the three stages of the CMBS System overlap; (2) the CMBS will not warn drivers in time to avoid an accident; and (3) the CMBS shuts off in bad weather. See Pls.' P & A, 1:1–9.

The Complaint states four causes of action, for violations of: (1) California Business and Professions Code Section 17200, which prohibits acts of "unfair competition" ("UCL"); (2) California Business and Professions Code Section 17500, which prohibits false advertising; (3) for Unjust Enrichment for violations of the Cal. Bus. Pro.Code sections referenced above; and (4) for violations of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code Section 1750 et seq. Defendant filed a Motion to Dismiss on January 24, 2008 (Docket # 7); the Court denied Defendant's Motion in a Minute Order dated February 26, 2008 (Docket # 14). Plaintiffs filed their original Motion for Class Certification on June 17, 2008 (Docket # 41). The Court denied Plaintiffs' Motion, without prejudice, in its Minute Order of September 24, 2008.

Plaintiffs Renewed Motion for Class Certification, filed on October 31, 2008 (Docket # 83), moves the court for an Order Certifying a Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), or in the alternative under Rules 23(a) and 23(b)(2) or 23(c)(4). Plaintiffs seek certification of the following Class:

> All persons in the United States who, between August 17, 2005 and class certification, purchased or leased, not for resale, Acura RL vehicles equipped with the Collision Mitigation Braking System.

Plaintiffs indicate that the CLRA cause of action applies only to vehicles purchased for "personal, family or household purposes." See Pls.' P & A, 15:7–9; Cal. Civ.Code. § 1761(d).

## II. Legal Standard & Analysis

All class actions must meet the four criteria set forth in Federal Rule of Civil Procedure 23(a). In addition, the class must meet one of the three categories of Rule 23(b).

Rule 23(a) provides four threshold criteria which must be met in order for a class to be certified: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.Pro. 23(a). These requirements are generally referred to as numerosity, commonality, typicality, and adequacy of representation. See Gen. Tel. Co. v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Rule 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and if: "(3) the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

## A. Burden on Plaintiff

Plaintiff has the burden of proving that the Rule 23 requirements have been met. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). *See also Schwab v. Philip Morris USA, Inc.*, 449 F.Supp.2d 992, 1097–98 (E.D.N.Y.2006). Plaintiff needs not, however, show that it is likely to prevail on the merits of their claims at the stage of class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983), *citing Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140. *See also Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir.2003).

## B. Evidentiary Objections

Both parties object to numerous portions of the evidence submitted by the parties in support of Plaintiffs' Renewed Motion for Class Certification and Defendant's Opposition to Plaintiffs' Renewed Motion for Class Certification. *See* Pls.' Evid. Obj. 4, 6, 8, 10, 14, 15; *see also* Def.'s Evid. Obj., 1:9–11;1:14–19; 1:25–27.

On a motion for class certification, however, the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims. Therefore, "the Federal Rules of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial." *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 279 (S.D.Ala.2006) ("the Federal Rules of Evidence are not stringently applied at the class certification stage because of the preliminary nature of such proceedings"); *see also Selzer v. Bd. of Ed. of City of New York*, 112 F.R.D. 176, 178 (S.D.N.Y.1986) (motion for class certification is not a mini-trial on the merits).

On a motion for class certification, the court may consider evidence that may not be admissible at trial. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (describing a court's determination of class certification as based on "tentative findings, made in the absence of established safeguards" and describing a class certification procedure as "of necessity ... not accompanied by the traditional rules and procedures applicable to civil trials"). The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the Plaintiffs' Renewed Motion for Class Certification. *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D.Minn.1999).

Despite the relaxed evidentiary standard, a serious issue is raised by Plaintiffs' objection to Defendant's Exhibit 9, the Customer Information Center DVD. Plaintiff indicates that the DVD and the attached Declaration of Pete Moran were both created after the discovery cut-off date of October 31, 2008. *See* Pls.' Obj., 4:23–26. The Declaration of Pete Moran is dated November 6, 2008; there is no indication as to when the DVD itself was created, but the Declaration indicates that the DVD contains the portion of the Customer Information Center material regarding the CMBS, and that the material on the DVD is identical to the material that was available to Acura dealers from October 20, 2005 to March 2008. *See* Def.'s Exh. 9, at 168. Plaintiffs assert that it appears that Defendant "may be manufacturing evidence" since the Declaration is silent on when the document was created and how it was subsequently discovered after the discovery cutoff date. *See* Pls.' Evid. Obj., 5:1–3, 7–8.

Although it appears that the Declaration *was* created after the discovery cutoff, Plaintiffs in effect ask the Court to assume, without evidence one way or the other, that the DVD was also created after the cut-off date. Moreover, Plaintiffs do not indicate that Defendant failed to disclose the *material* contained on the DVD prior to the cutoff date, nor do Plaintiffs ask the Court to take any

action under Rule 37 for failure to supplement Rule 26 disclosures.[1] Plaintiffs merely state, "The Court has the authority to exclude evidence based on a party's failure to comply with discovery deadlines that were set forth in the court's scheduling order," citing *Geiserman v. MacDonald*, 893 F.2d 787, 789 (5th Cir.1990); *See* Pls.' Evid. Obj., 4:17–22; 6:12–19.

Plaintiffs do not show that this evidence should be excluded under Rule 26 or Rule 37 for failure to disclose, or that it should be excluded as a discovery sanction.

### C. The Proposed Class and the Rule 23 Criteria

Plaintiffs seek to certify the following class:

All persons in the United States who, between August 17, 2005 and class certification, purchased or leased, not for resale, Acura RL vehicles equipped with the Collision Mitigation Braking System.

Plaintiffs indicate that the CLRA cause of action applies only to vehicles purchased for "personal, family or household purposes." *See* Pls.' P & A, 15:7–9; Cal. Civ.Code. § 1761(d).

### 1. Numerosity

■ Rule 23(a)(1) states that a class may be maintained only if the class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1); *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573–74 (N.D.Ill. 1992); *In re Paxil Litig.*, 212 F.R.D. 539, 545–46 (C.D.Cal.2003). To meet this requirement, the Plaintiff need not establish the exact number of class members. SCHWARTZER, ET AL., Cal. Prac. Guide: Civ. Pro. Before Trial, § 10:270 (The Rutter Group 2008). As a general rule, classes of forty or more are considered sufficiently numerous. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.Cal.1988). Plaintiff may satisfy Rule

23(a)(*l*)'s numerosity requirement by providing "[a] reasonable estimate of the limited number of purported class members." *In re Badger Mountain Irr. Dist. Securities Litigation*, 143 F.R.D. 693, 696 (W.D.Wash.1992).

■ Plaintiffs contend they have met the numerosity requirement for the proposed class, because the evidence indicates that there are over 1,958 2006–2009 Acura RL vehicles in the United States with the CMBS System, 396 of which are located in California.[2] *See* Pls.' P & A, 15:27–16:2; Shahian Decl., Ex. 38 at 0199:4–14. Defendant challenges whether Plaintiffs' proposed class is ascertainable.

Plaintiffs argue that the proposed classes are ascertainable, because the class members can be identified with reference to Defendant's records. Plaintiffs point out that Defendant has the capability to determine every class member, and has in fact done so. *See* Pls.' P & A, 15:10–12; *see also* Def.'s Opp., 11:11–15 (identifying geographic areas where purported class members live). Plaintiffs argue that using Defendant's records, potential class members can be easily ascertained.

Defendants argue that Plaintiffs' class definition is not ascertainable because it does not distinguish between consumers who purchased new or used 2006–2009 model year Acura RLs with CMBS, and because individual inquiries are necessary to identify consumers who purchased RL vehicles for "personal, family, or household purposes" under the CLRA.

Plaintiffs indicate in their Reply papers that the CLRA "clarification" as to "personal, family, or household purposes" is "intended solely to exclude dealer/wholesale purchases, which would result in a dealer being erroneously paired with each actual class member." *See* Pls.' Reply, 17:17–18:1–2. Plaintiffs indicate, and the Court agrees, that the Class can therefore be determined with reference to Defendant's records. Accord-

---

1. FRE Rule 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

2. The court notes that the exhibit relied upon by Plaintiffs for these figures indicates that 458 vehicles are located in California. *See* Shahian Decl., Ex. 38 at 0199:4–14.

ingly, the Court finds that Plaintiffs have established numerosity.

### 2. Commonality

■■■ Federal Rule of Civil Procedure 23(a)(2) requires questions of law or fact common to the class. "It is important to note that this provision does not require that all the questions of law and fact raised by the dispute be common ..." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Fed. Prac. and Proc. § 1763. The Ninth Circuit has stated that only *some* issues of law and fact need be in common:

> Commonality focuses on the relationship of common facts and legal issues among class members. Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Dukes v. Wal–Mart Inc.*, 474 F.3d 1214, 1225 (9th Cir.2007) (*citing* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3:10 at 271 (4th ed.2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998)). The commonality test is "qualitative rather than quantitative." *Dukes*, 474 F.3d at 1225. Only one significant issue of law or fact need be demonstrated to meet this requirement. *Id.* (*citing Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y.1997), *aff'd*, 164 F.3d 81 (2d Cir.1998); 1 NEWBERG ON CLASS ACTIONS § 3:10 at 272–74).

■■■ Plaintiffs indicate that common questions of law and fact include: (1) whether Honda had a duty to Plaintiffs and the prospective class members to disclose that: the three stages of the CMBS System overlap; the CMBS will not warn drivers in time to avoid an accident; and that the CMBS shuts off in bad weather; (2) whether Honda had exclusive knowledge of material facts regarding the CMBS System, facts not known to Plaintiffs and the prospective class members before they purchased the RL equipped with the CMBS System; (3) whether a reasonable consumer would find the omitted facts material; and (4) whether Honda's omissions were likely to deceive the public.

Accordingly, the Court finds that Plaintiffs have established the commonality requirement of Rule 23(a).

### 3. Typicality

■■■ Typicality requires that the representative class members make claims that are typical of those of the absent class members. While the commonality and typicality requirements tend to merge somewhat, they are distinct. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The commonality requirement looks to common question of law or of fact, and the typicality requirement is that the claims of the class representatives are typical of those of the class, and is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir.1997); *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.2001).

■■■ The class representatives' claims need not be identical or even substantially identical. The representatives' claims need only be *similar*. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). Indeed, some degree of individuality is to be expected in all cases. *Armstrong*, 275 F.3d at 868 (*citing Staton*, 327 F.3d at 957). Courts looks to whether class members have similar injuries, "whether the action is based on conduct which is not unique to the named plaintiffs," and whether other class members were injured by the same conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992); *Dukes*, 474 F.3d at 1232; *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985). The purpose of the typicality requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

In this case, Plaintiffs' and the proposed class members' claims all arise from Honda's alleged omission of the CMBS System's limitations, giving rise to the same, class-wide injury type. *See* Pls.' P & A, 18:24–19:5.

Defendants argue that Plaintiffs' claims are not typical because, in order to be typical, "plaintiffs must demonstrate that proof of the class representative's individual case will necessarily also prove the claims of the class members," and that Plaintiffs have failed to explain how that standard is met here. Defendant's brief argument is unpersuasive, however; Plaintiffs have shown that the proposed class members' claims all arise from Honda's alleged omission of the CMBS System's limitations. Accordingly, the Court finds that Plaintiffs' have shown that the class representative's claims are typical of the proposed class.

### 4. Adequacy of Representation

To meet the requirement of adequacy of representation, "the class representatives must not have interests antagonistic to the unnamed class members" and "the representative must be able to prosecute the action Vigorously through qualified counsel.' " *Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D.Cal. 2005) (*citing Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978)).

Plaintiffs' interests are aligned with the absent class members' interests. Plaintiffs' counsel has invested considerable time since the initiation of the litigation garnering evidence, formulating legal theories, reviewing thousands of pages of documents, and taking numerous depositions. *See* Pls.' P & A, 19:21–24; 20:1. Plaintiffs' counsel is experienced in both consumer law and class action litigation, as evidenced by the declaration submitted on the issue. *See* Primo Decl., ¶¶ 4, 6.

Defendant briefly argues that Plaintiffs are not adequate representatives because one of the named Plaintiffs stated during his deposition that he only represented himself, "and that's it," until a class was certified. *See* Def.'s Opposition, 29:6–7. However, "as long as competent representa-tion is provided by the class action lawyer, the class interests will be protected." SCHWARZER, ET AL., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial, § 10:343 (The Rutter Group 2008)(citing *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001); *Dechert v. Cadle Co.*, 333 F.3d 801, 803 (7th Cir.2003); *New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 313 (3d Cir.2007)). Named Plaintiffs need not be knowledgeable about all the details of the class action mechanism in order to be an adequate representative.

Accordingly, the Court finds that Plaintiffs have established adequacy of representation.

### D. Rule 23(b)(3) Requirements

In addition to the Rule 23(a) factors, discussed in Section II(C), Plaintiffs must establish one of the three requirements of 23(b). Plaintiffs submit that the class here can be properly certified under Rule 23(b)(3), which states, "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ...".

### 1. Predominance Inquiry

Rule 23(b)(3) contains two prerequisites for the maintenance of a class action. First, the court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

Rule 23 does not set forth a test for when common issues "predominate." "[n]or have the courts developed any ready quantitative or qualitative test for determining whether the common questions satisfy the rule's test." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 7AA FED. PRAC. AND PROC. § 1778. Wright, Miller & Kane describe the issue as one for "pragmatic" determination, noting that "predominate" should not be equ-

ated with "determinative". *Id.* ("Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered properly under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to individual class members.")

a. Predominance of Legal Issues: Choice of Law Analysis

■ In nationwide classes grounded on state law, "choice of law problems often prevent a class from satisfying the 'predominance' requirement, because '(i)n a multistate class action, variations in state law may swamp any common issues.' " Schwarzer, et al., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial, § 10:416 (The Rutter Group, 2008)(quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996)).

■ The application of a forum state's laws is presumed where the defendant has a "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class . . .". See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Here, Defendant's allegedly deceptive practices originate in, and emanate from, California. *See* Pls.' P & A, 20:16–23. Defendant is a California corporation, with its principal place of business and corporate headquarters in Torrance, California, including its headquarters for sales, marketing, research and development. According to Plaintiffs, "Virtually every event connected with the CMBS System—notably its design and marketing— happened in California." *Id.* at 2:13–14. Plaintiffs also note that the advertising agency hired by Honda to create the print, radio, and television advertising for the Acura RL and the CMBS System is based in Santa Monica, California, and that the agency retained for internet-based advertising is based in Culver City, California. *Id.* at 4:4–10.

■ "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir.

2001) (citation omitted). California applies a three step governmental interest analysis to determine to which law to apply. *Washington Mutual Bank v. Superior Court of Orange County*, 24 Cal.4th 906, 919, 103 Cal. Rptr.2d 320, 15 P.3d 1071 (Cal.2001). First, "the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Id.* Second, if the court finds a material difference, it must "determine what interest, if any, each state has in having its own law applied to the case." *Id.* at 920, 103 Cal.Rptr.2d 320, 15 P.3d 1071. "Only if the trial court determines that the laws are materially different *and* that each state has an interest in having its own law applied . . . must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.* (emphasis in original). California's three-part choice of law analysis must be applied to every cause of action for which certification is sought, and for every non-forum state for which the Defendant asserts has an interest. *Zinser*, 253 F.3d at 1188.

The Defendant argues that California law conflicts with the laws of various other jurisdictions. *See* Def.'s Opp., 10:10–12. The Defendant, as the proponent of the application of foreign law, therefore bears the burden of proof. *Wash. Mut.*, 24 Cal.4th at 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071; *see also Zinser*, 253 F.3d at 1187. Defendant indicates that 44 of the 51 jurisdictions (including the District of Columbia) are implicated by Plaintiffs' claims, and that over 75% of purported class members live in twelve states. *See* Def.'s Opp., 11:11–13, fn. 33 (detailing geographic breakdown of potential class members). Although Defendant's Appendix lists the relevant law from all 44 of the jurisdictions in which proposed class members reside, the Court notes that Defendant focused its analysis on the so-called "primary jurisdictions"—the twelve states where over 75% of the purported class members reside. *Id.* at 11:14–15. These include California, Washington, Texas, Illinois, Ohio, Virginia, Florida, Maryland, Pennsylvania, New York, New Jersey, and Massachusetts.

## 1. Choice of Law Analysis: Step One

### A. California's UCL

The first step in the Choice of Law analysis is that the foreign law proponent must identify the applicable rule of law in each potentially concerned state and show that it materially differs from the law of California. *See Washington Mutual Bank v. Superior Court of Orange County,* 24 Cal.4th 906, 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (Cal.2001). Here, Defendant argues that California's UCL materially conflicts with the Consumer Protection Statues ("CPS") of other jurisdictions.

For example, the issue of whether or not reliance is required for UCL claims in California is currently before the California Supreme Court.[3] Defendant argues that regardless of how that case is decided, reliance is required for a CPS claim in Washington, Texas, Illinois, Virginia, and Pennsylvania, while it is not required under the CPS in Ohio, Florida, New Jersey, Massachusetts, and New York. *See* Def.'s Opp., 12:5–11.

Similarly, Plaintiffs suing under the UCL in California are limited to restitution and injunctive relief, however the CPS in most of the primary jurisdictions permit greater forms of relief, including actual damages, treble damages, punitive damages, and attorney's fees. *See* Def.'s Opp., 12:12–16 (including citations).

Defendant also argues that the scope of actionable conduct differs between jurisdictions. The definition of "unfair" under the UCL is an open question,[4] while some of the primary jurisdictions follow the FTC standard set in *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972), and others follow the FTC's more recent three-part test, found at 15 U.S.C. § 45(n)(Washington). *See* Def.'s Opp., 13:1–6. In addition, although California's UCL does not require scienter, some for of scienter is required under the CPS of states including New Jersey, Illinois, Pennsylvania, and Virginia. *Id.* at 13:7–10. De-

fendant also indicates differences in the pre-filing notice requirements, the statutes of limitations, and the fact that although UCL claims may be prosecuted on a class basis, several states do not permit class actions under their CPS, including Virginia (a primary jurisdiction), as well as non-primary jurisdictions of Georgia, Iowa, Kentucky, Louisiana, and Mississippi. *Id.*

### B. California's CLRA

Defendant argues that California's CLRA also conflicts with the CPS of other jurisdictions, because there is "little uniformity" as to how "personal, household, or family use" is defined in the various jurisdictions. Cal. Civ.Code. Section 1761(d) defines a "consumer" as persons buying goods or services for personal, family, or household use, whereas primary jurisdictions including Maryland, Texas, and New Jersey provide a more expansive definition, including purchases made for agricultural, partnership, corporate and other uses. *See* Def.'s Opp., 14:9–13 (including citations to state statutes). Defendant points out others differences similar to those discussed above, regarding the requirements of reliance and scienter, the scope of actionable conduct, the statute of limitations, and the requirement of a pre-filing notice. *Id.* at 14:8–14, 15:1–15.

### C. Unjust Enrichment Claims

Defendant argues California law conflicts with the laws of the primary jurisdictions regarding unjust enrichment claims, in that California courts themselves are split on whether California recognizes a cause of action for "unjust enrichment," while all of the primary jurisdictions permit stand-alone unjust enrichment claims. *See* Def.'s Opp., 15:17–18; 16:1–2. Some states permit unjust enrichment claims at law, while others only permit claims in equity. The primary jurisdictions also impose varying statute of limitations, and measure unjust enrichment recovery under widely varying standards. Some, for example, do not specify the misconduct

---

**3.** *In re Tobacco II Cases,* S147345, is currently before the California Supreme Court.

**4.** *See Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal.App.4th 638, 646, 72 Cal.Rptr.3d 903 (2008)(definition of unfair under the UCL "in a consumer action is uncertain").

necessary to proceed, while others require dishonesty or fraud. *Id.*

■ Although Defendant has pointed out variations between California law and the relevant law in the other jurisdictions, the Court finds that Defendant has not met its burden of showing that the differences between California law and the law of other jurisdictions are *material.* Merely because "two or more states are involved does not in itself indicate that there is a conflict of law problem." *See Washington Mutual,* 24 Cal.4th 906, 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001). The differences among the state laws must be materially different. *Id.* at 920, 103 Cal.Rptr.2d 320, 15 P.3d 1071. Defendant's analysis fails to show that these differences are in fact material.

For example, regarding the limitation of the UCL to restitution, while other states unfair competition laws provide for a wider range of remedies, Plaintiffs point out that a CLRA violation, which serves as a predicate UCL violation under the UCL's "unlawful" prong, provides for each of the remedies that Defendant contends would be unavailable with the application of California law to a nationwide class. The CLRA provides for actual damages, injunctive relief, restitution of property, punitive damages, and any other relief that the Court deems proper. *See* Cal. Civ.Code § 1780(a)(*l*)-(5). This weighs in favor of finding that these differences are not material.

The Court finds, based on the papers presented and oral arguments of the parties at the hearings on December 8 and 9, 2008, the that Defendant has not shown that the differences between the various state laws are *material,* nor that any further briefing on the issue is necessary. The Court therefore need not move beyond the first step in the Choice of Law analysis. *See Washington Mutual,* 24 Cal.4th at 919-20, 103 Cal. Rptr.2d 320, 15 P.3d 1071.

### 2. Choice of Law Analysis: Step Two

Even if the Court *had* found that Defendant had illustrated material differences between the state laws relevant to the issues in this case, the Court concludes that Defendant has not met its burden as to the second step of the Choice of Law analysis, namely that other states have an interest in applying *their* laws in this case.

The second step in California's Choice of Law analysis is to determine what interest, if any, each state has in having its own law applied to the case. *Washington Mutual,* 24 Cal.4th at 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071. Defendant's note:

> Although California has an interest in regulating the conduct of corporations headquartered within its borders, several courts—including the Ninth Circuit—recognize that the home states of the nonresident plaintiffs also have a profound interest in protecting their citizens from allegedly fraudulent conduct within their state, and in delineating the scope of recovery for their citizens.

*See* Def.'s Opp., 16:16-20. Relying on two District Court cases out of New Jersey, Defendant argues that courts "refuse to apply a single state's laws based solely on the assertion (identical to the one plaintiffs make here) that the allegedly wrongful conduct 'emanated' from the state where the defendant is headquartered." *See* Opp., 17:1-4; *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 348 (D.N.J.1997)(rejecting claim that "Michigan has the greater interest in having its law apply because Ford's headquarters are located in Michigan" and "any misrepresentations, statements or advertisements regarding the Ford vehicles originated in Michigan"). To hold otherwise, according to Defendant, would "strip all other states of their ability to regulate the sale and marketing of products to their resident consumers any time a California company sold or marketed the product in question." *Id.* at 17:4-6.

As Plaintiffs papers point out, however, even states with a generalized interest in a consumer protection statute with, for example, a strict reliance requirement, cannot be said to have an interest in *this litigation,* because a reliance requirement "can only be conceived as a provision intended to protect businesses, within a consumer protection statute." *See* Pls.' Reply, 10-14. For exam-

ple, Virginia adopted its reliance requirement because of a concern that business would be unduly burdened if such a requirement were not adopted. Yet Virginia's interests in shielding Virginia businesses from excess litigation is "of no moment in this litigation." *Id.* at 8:14–17.

Plaintiffs also point out that California's consumer protection statutes are among the strongest in the country, and that so long as the alleged anti-consumer behavior "emanated" from California, California's more favorable laws "may properly apply to benefit of nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery." *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 110 Cal. Rptr.2d 145 (2001)(quoting *Clothesrigger, Inc. v. GTE Corp. et al.*, 191 Cal.App.3d 605, 612–16, 236 Cal.Rptr. 605 (1987))(trial court "erred in stating that California has no interest in providing nonresident plaintiffs greater protection than their home state provides"). As Plaintiffs indicate, Defendant has not identified a state with an interest in *denying* its citizens recovery under California's potentially more comprehensive consumer protection laws, nor has Defendant identified prospective class members who will be less protected under California law than under their own states' consumer protection statutes. *See* Pls.' Reply, 8:18–27; 9:1–4.

The Court finds that Defendants have not shown that another state has an interest in applying its laws to *this* litigation. Accordingly, the Court need not analyze the third step in California's choice of law analysis. As Plaintiffs point out in their Reply papers, the governmental interests underlying the statutes and case law that are the basis for the proffered conflict of laws are relevant to the second step in the Choice of Law analysis. *See* Pls.' Reply, 7:15–17. Defendant offers a thorough consideration of such purposes in its discussion of the third step in the Choice of Law analysis. *See* Opp., Section D ("Other Jurisdictions' Interests Will Be More Impaired If California Law Applies").

3. Choice of Law: Step Three

"Only if the trial court determines that the laws are materially different *and* that each

state has an interest in having its own law applied ... must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Washington Mutual,* 24 Cal.4th at 919–20, 103 Cal.Rptr.2d 320, 15 P.3d 1071.

■■■ Defendant's Opposition thoroughly discusses the interests of other jurisdictions, arguing that such states would be "more impaired" if California law applies in this case. Defendant argues for the application of the law of each consumer's home jurisdiction on the following general grounds: (1) each state's choice about the standards applied to the marketing and sale of products represents a policy decision about the costs and benefits of particular regulatory schemes, which will be compromised if California law applies; (2) the home jurisdictions have a stronger interest in deterring foreign corporations from injuring its citizens and ensuring its citizens are compensated; (3) the Restatement (Second) of Conflicts § 148 indicates that the state where the plaintiff received, and acted in reliance upon, the defendant's representations is usually the state whose law applies; (4) applying the laws of each non-resident plaintiff's home state will advance California's interests in deterring wrongful conduct by businesses headquartered in California while allowing the maximum attainment of the underlying purposes of the consumer protection statutes of the non-resident plaintiffs' states; (5) non-resident Plaintiffs would have no claim under the CLRA because the statute's legislative history shows that the CLRA only protects consumers in California. *See* Def.'s Opp., pages 18–19.

Defendant also argues that a number of state-specific interests will be "more impaired" by the application of California law. For example, New Jersey's Consumer Fraud Act does not require proof of reliance, so New Jersey's interest in remedying deceptive business practices in cases where common law fraud may not be present would be "more impaired" if the CLRA, which requires reliance, applied. Along those same lines, the Florida legislature strengthened its

Deceptive and Unfair Trade Practice Act by adding language to protect the public from those who engage in " 'unconscionable' acts or practices," while the California legislature specifically excluded such language from its CLRA. *See* Def.'s Opp., 20:8–18. Massachusetts's original version of its consumer protection statute limited claims to individuals who suffer a loss of money or property as a result of unfair or deceptive practices, but amended the provision in 1979 to require only that claimants show a form of "injury," thereby broadening the class of persons who could maintain an action under the statute. California's Proposition 64, by contrast, limited the UCL by requiring claimants to suffer a loss of money or property. Defendants argue that Massachusetts interests will be "more impaired" if California law is applied to plaintiffs residing in Massachusetts here. Defendant makes similar arguments as to the consumer protection statutes in the other jurisdictions as well.

Virginia appears to be the only state which does not permit class actions under its consumer protection statute. *See* Def.'s Opp., 23:11–24; Va.Code Ann. § 59.1–196. Defendant argues that although the statutory remedies under Virginia's consumer protection statute and the CLRA are similar, consumers' remedies if the UCL applies would be "significantly" curtailed, and that Virginia's interests in compensating its residents under its own statutory scheme would be impaired if California law were to apply.

Defendant ultimately argues that class certification is not appropriate because the laws of each plaintiff's home state should apply to its residents' claims, precluding a finding of predominance of common issues of law. Plaintiffs' claims "would involve hundreds of issues and sub-issues, requiring the Court to examine, state-by-state, each issue on which there was a conflict." *Id.*

Although Defendant has pointed to the relevant interests of the primary-jurisdiction states, Defendant, even if it had met its burden of step one and step two of the Choice of Analysis, has not shown how these interests are implicated *in this litigation.* For example, although Massachusetts and California require a different showing as to

the "injury" suffered, as discussed above, Defendant has not shown that the different requirement would have any effect on this case, where class members all purchased cars equipped with the CMBS.

The Court concludes that California, as the forum state, has enough "significant contact or aggregation of contacts' to the claims asserted," given Defendants' contacts with the state, "in order to ensure that the choice of [California] law is not arbitrary or unfair" to nonresident class members. *See Clothesrigger, Inc.*, 191 Cal.App.3d 605, 613, 236 Cal. Rptr. 605 (1987). The Court therefore concludes that Plaintiffs have established that common issues of law predominate, as required by Rule 23(b)(3).

**B. Predominance of Factual Issues**

**1. The CLRA Claim**

■■■ Defendant argues that individual factual issues preclude certification because Plaintiffs' CLRA Claims require claimant-specific inquiries. Defendant argues that CLRA claims "sounding in fraud" require proof of "actual reliance." *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App. 4th 798, 810, 66 Cal.Rptr.3d 543 (2007). Plaintiffs argue that an inference of reliance arises as to the entire class so long as the Court finds that material misrepresentations were made to the prospective class members, relying on *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190. Defendant argues that no such inference applies here.

In *Mass. Mutual*, purchasers of Defendant's "vanishing premium" insurance policies brought a class action claiming Defendant failed to disclose that it intended to change the policies so that dividends would be insufficient to cover premiums. *Id.* at 1286, 119 Cal.Rptr.2d 190. The Court of Appeal found that the trial court had not abused its discretion in presuming reliance, noting that "in determining whether the inference of reliance arises, the trial court will have to consider whether other information which [the defendant] disclosed about its [product] provided buyers with all the material information they needed in making a

decision to purchase [defendant's] product." *Id.* at 1294, 119 Cal.Rptr.2d 190. The Court stated that given the broad dissemination of the defendant's information, "the trial court could have reasonably concluded that the ultimate question of whether the undisclosed information was material was a common question of fact suitable for treatment in a class action." *Id.* The Court also noted, however, that "should it develop that class members were provided such a variety of information that a single determination as to materiality is not possible, the trial court has the flexibility to [create subclasses] or to decertify the class altogether." *Id.* n. 5.

Defendant argues that a single determination of materiality is not possible here, because Consumers who viewed the CMBS video on the CIC at Acura dealerships, read the Summer 2007 Acura Style Magazine, or reviewed the information on "OwnerLink" or "MyAcura" before purchasing an RL could not have been misled in the manner alleged by Plaintiffs. Defendant argues that unlike in *Mass. Mutual,* here consumers were exposed to the variety of information which the Court in *Mass. Mutual* advised may preclude a presumption of reliance. Moreover, Defendant argues that unlike in *Mass. Mutual,* where consumers all heard the same sales presentation, there is no evidence that every class member received, much less was misled, by the advertising Plaintiffs identify. For example, Plaintiffs cannot prove that every class member saw the first version of the CMBS commercial that Plaintiff Mazza stated was critical to his decision to purchase an RL. *See* Pls.' Ex. 17 (Mazza Depo.), at 83:4–6. That first version, according to Defendant, aired for one week before it was modified. Plaintiff Kalsi was not sure about which version of the commercial he saw; other consumers likely saw neither. *See* Def.'s Opp., 6:21–24; 7:1–2.

Defendant argues that the instant case is closer to *Caro v. Procter & Gamble,* in which the Court of Appeal affirmed denial of a CLRA claim asserting that consumers overpaid for orange juice due to labeling that misrepresented that the juice was "fresh" and contained "no additives." *See Caro,* 18 Cal.App.4th 644, 668, 22 Cal.Rptr.2d 419

(1993). The Court concluded that whether any misrepresentation was material turned upon consumers "personal assumptions about the nature of the products they wanted to buy and upon reading various portions of the [orange juice carton] labels." *Id.* at 668–69, 22 Cal.Rptr.2d 419. This was especially true where the manufacturer also disclosed on the carton that the orange juice was "from concentrate." *Id.* at 665, 668, 22 Cal.Rptr.2d 419. The Court concluded that "whether any asserted misrepresentation induced the purchase of [ ] orange juice would vary from consumer to consumer," and therefore, the issue of liability was not susceptible to class-wide proof. *Id.* at 668, 22 Cal.Rptr.2d 419.

Defendant argues that as in *Caro,* here there is no classwide proof that all consumers who purchased an RL with the CMBS system were ignorant of Defendant's disclosures. *See* Def.'s Opp., 7:17–21. Nor can there be classwide proof that every consumer interpreted Defendant's advertising to mean that the CMBS would always proceed through three warning stages. *Id.* Defendant argues that even if a presumption of reliance applied, it would not eliminate Honda's right to present individual evidence negating such a presumption as to each purported class member, which weighs against a finding that common issues would predominate. *Id.* at 7:22–24; *In re St. Jude Medical,* 522 F.3d 836, 840 (8th Cir.2008)(relaxed reliance standards do not "eliminate the right of a defendant to present evidence negating a plaintiff's direct or circumstantial showing of causation and reliance," and that the "need for such plaintiff-by-plaintiff determinations means that common issues will not predominate....").

Plaintiffs point out, however, that *Caro* involved *affirmative misrepresentation,* rather than omissions; the information about the product in *Caro* was printed on the carton, and the issue was whether prospective class members read all of the information on the carton, and how they interpreted it. Here, Plaintiffs' claims are that Honda failed to disclose material information about the CMBS system.

Honda contends that the omissions were actually revealed in five different media: (1)

the Customer Information Center (CIC), which is an "interactive sales tool"; (2) *Acura Style* magazine; (3) Acura RL Media Day; (4) the Internet-based "Owner Link"; (5) and the "Glove Box DVD." *See* Pls.' Reply, 1:16–23.

Plaintiffs' Reply argues that any pre-purchase references to the omissions were far less prominent than the resources only designed for, and generally only available to, people who had already paid $4000 extra for an RL with the CMBS System. The CIC videos, for example, are available only to Acura dealers, and can be accessed only through a dealer entered password. *See* Pls.' Reply, 14:17. There is little evidence that any of these videos were ever viewed by the prospective class members prior to their purchase. *Id.* Acura Style Magazine is a publication Honda sends to Acura dealers, subscribing Acura owners, and interested customers. A CMBS specific article was published in the Summer 2007 issue, disclosing that the CMBS responds with "any or all three" stages in response to a potential collision. *See* Def.'s Opp., 3:16–22. Although Honda indicates that Acura dealerships received ten copies of the magazine in the Summer of 2007, there is no evidence that any consumers read or were likely to have read the magazine before buying an RL with the CMBS. Finally, Honda contends that there was some reference to the "overlap" of the three stages of the CMBS System at the OwnerLink website (the membership-blocked *MyAcura.com*) and in the GloveBox DVD, there is no evidence that these resources were consulted by consumers pre-purchase, nor intended to be. *See* Pls.' Reply, 3:6–9.

The Court finds the facts of this case to be closer to those of *Massachusetts Mutual*, where the omitted information *may* have been available to some consumers, pre-purchase but there was no evidence consumers received it, than it does to the facts of *Caro*, where the information was available on the juice carton. Like in *Mass. Mutual*, "there is no evidence any significant part of the class had access to all the information plaintiffs believed they needed before purchasing [defendant's product.] Indeed, there is nothing in the record which shows that Mass Mutual's own assessment of the [product's alleged deficiencies] was disclosed to any class member." *See Mass. Mutual*, 97 Cal. App.4th at 1295, 119 Cal.Rptr.2d 190. Although the information about the limitations of the CMBS system may have been available in some media, there is little-to-no evidence that this information was available or reached consumers prior to their purchase of the RL with CMBS System.

Based on the facts of this case and the written and oral arguments presented by the parties, the Court concludes that Plaintiffs are entitled to an inference of reliance as to this claim. Accordingly, the Court finds that common issues of fact predominate as to the question of materiality under the CLRA Cause of Action.

2. Plaintiffs' UCL & False Advertising Claims

■■■ Plaintiffs argue that common questions predominate as to the UCL Claim because, like the CLRA Claim, they are based on a uniform omission of material fact. Classwide liability under the UCL may be found on the basis that a defendant's conduct violated a statute or was "likely to deceive" consumers. *See Mass. Mutual*, 97 Cal. App.4th at 1289, 119 Cal.Rptr.2d 190. Plaintiffs argue that the Defendant's alleged conduct violates each disjunctive prong of the UCL: "unlawful," "unfair," or "fraudulent" conduct. The omission was unlawful because it violated California's False Advertising Law (Cal. Bus. & Prof.Code § 17500, et seq.); unfair because its potential for harm outweighs any possible benefit to consumers (*See State Farm Fire & Cas. Co. v. Sup. Ct.*, 45 Cal.App. 4th 1093, 1103, 53 Cal.Rptr.2d 229 (1996)); and is fraudulent because it is "likely to deceive" consumers. *See Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1266–67, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).

Defendant argues that Plaintiffs cannot show that the omissions or representations were "material," as required for Plaintiffs' UCL and false advertising claims, and that Plaintiffs have not shown that materiality can be established through classwide proof. *See* Opp., 8:5–12. Defendant argues that in order to establish that the alleged omissions

were "material," each class member must testify concerning his or her interpretation of Honda's advertising, and whether in purchasing an RL with CMBS, each class members was concerned (as the named Plaintiffs appear to have been) about *how* CMBS would work (e.g., the process of proceeding through the three stages) instead of whether it achieved its advertised objective of warning before collisions. Defendant also notes that Plaintiff Mazza admitted during his deposition that when he posted his concerned about the CMBS system on the internet, a number of consumers disagreed with his conclusion that Honda had misrepresented the CMBS. *See* Def.'s Opp., 8: fn. 26.

As discussed above in relation to the CLRA Cause of Action, based on the evidence regarding the pre-purchase availability of the material disclosing the CMBS System's limitations, the Court similarly concludes that the question of materiality is a common one that could be determined on a class-wide basis. As to the UCL Cause of Action, then, the Court concludes that common issues of fact predominate.

■ To state a claim under California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.), Plaintiff must show only that members of the public are "likely to be deceived." *See Day v. AT & T*, 63 Cal. App.4th at 332, 74 Cal.Rptr.2d 55. The standard is that of the "reasonable consumer." *See Williams v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir.2008). Actual deception or confusion caused by the misleading statements is not required. *See Day*, 63 Cal.App.4th at 332, 74 Cal.Rptr.2d 55. Here, Plaintiffs allege that Honda engaged in unfair, deceptive, untrue or misleading advertising when it failed to disclose that the CMBS System would not reliably function, in contrast to the express and implied messages in Honda's advertising and promotional materials. Pls.' P & A, 23:5–13. Accordingly, Plaintiffs have established that common issues of fact predominate as to the False Advertising Law claim.

### 3. Unjust Enrichment Claims

■ A claim for unjust enrichment entails: (1) the receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000). Remedies include a constructive trust and restitution. *See Brady v. Brown*, 50 F.3d 13 (9th Cir.1995). Defendant argues that Plaintiffs' Unjust Enrichment Claims require claimant-specific proof, and therefore that common issues of fact do not predominate as to this claim. *See* Def.'s Opp., at 9:13–20. For example, Defendant argues it would not be "unjust" for Honda to retain a "benefit" from consumers who were fully aware of the system's limitations and range of functions at the time of purchase, or who were not concerned about how CMBS worked as long as it achieved its advertised purpose of alerting drivers to the risk of collision, or reducing impact if a collision was unavoidable. Defendant argues the same holds true for consumers who purchased an RL because they were interested in some other feature of the CMBS system, such as "Adaptive Cruise Control," and got exactly what they wanted. *See* Def.'s Opp., 9:23–10:6.

■ Plaintiffs' Motion papers argue that common questions predominate as to the unjust enrichment claim because Honda's failure to reveal that the CMBS System does not perform reliably "induces reliance on the part of consumers, which results in consumers' greater propensity to purchase the Acura RL with the $4,000 CMBS option." For the same reasons discussed above, the Court finds that common issues of fact predominate as to Plaintiffs' Unjust Enrichment claims.

Accordingly, the Court finds that Plaintiffs have established that common issues of fact and law predominate as to the Causes of Action asserted, satisfying the first prerequisite of Rule 23(b)(3).

### 2. Superiority of the Class Action Mechanism

■ Under the second prerequisite of 23(b)(3), the court must find that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) sets forth four factors for consideration in determining

whether a class can be certified under this provision: (a) the interest of the individual class members in controlling the litigation, (b) the extent and nature of any ongoing litigation involving the same matters, (c) the desirability of concentrating the adjudication of all the members claims in the forum in which the class action is lodged, and (d) the management difficulties that may be encountered in a class action. Fed. R. Civ. Pro. 23(b)(3).

■ As reflected more fully by the Reporter's Notes of the hearings held on December 8 and 9, 2008, Plaintiffs addressed these factors at oral argument. Based on the fact that the potential damages for each class member are approximately $4,000, the Court finds that the individual class members do not have a strong interest in controlling the litigation. The parties appear to agree that there is no ongoing litigation involving the same matters aside from the instant case. Based on Defendant Honda's contacts with the state of California, discussed in Section II(D)(1)(A), the Court finds that the desirability of concentrating the litigation in the Central District of California weights in favor of finding the class action mechanism superior. Finally, the Court finds that Plaintiffs adequately addressed the Court's concerns as to potential manageability difficulties of the class action. These factors weigh in favor of finding the class action mechanism superior in the instant case.

Although Defendant's arguments as to the issue of superiority are well-reasoned and have merit, the Court ultimately finds Defendant's arguments unpersuasive. Accordingly, the Court finds that Plaintiffs have established that the class action mechanism is superior in this case.